**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Lorrie A. Scardino, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:14-cv-2900-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Electronic Health Resources, LLC, and | ) | |
| Wilfred Wayne Cooper, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiff Lorrie Scardino's motion to stay, transfer, or dismiss a related action pending in the United States District Court for the Northern District of Florida (ECF No. 43). For the reasons stated herein, this Court denies Scardino's motion and transfers this case to the Northern District of Florida.

**BACKGROUND**

The action pending in this Court arises out of a dispute between two former business associates. On June 3, 2014, Scardino filed suit in South Carolina state court against her former employer, Electronic Health Resources, LLC ("EHR"), and Wayne Cooper, EHR's executive director. Scardino alleges she acquired an ownership or partnership interest in EHR by virtue of her equity contribution to EHR, her position as a "senior partner," in EHR, and various actions or representations by Cooper. She further alleges that, notwithstanding her interest in EHR, Cooper improperly terminated her employment with EHR in May 2014 and then recharacterized her previous equity contribution as a loan. In her complaint, Scardino asserts claims against EHR and Cooper for breach of contract, breach of contract accompanied by fraudulent act, negligent misrepresentation, fraud, violation of the South Carolina Unfair Trade Practices Act, breach of

fiduciary duty, and a violation of the South Carolina Payment of Wages Act. In addition to requesting an accounting and repayment of her contribution plus interest, Scardino also seeks unspecified actual and exemplary damages, together with attorney's fees and costs.

EHR and Cooper removed the case to this Court in July 2014. They then filed separate motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). After briefing, the Court issued an order on October 20, 2014, directing the parties to conduct jurisdictional discovery. In that order, the Court denied the motions without prejudice and with leave to refile after the discovery period ended.

Initially, the parties did not conduct the jurisdictional discovery. Instead, in December 2014, the parties agreed upon terms for a settlement that would take several months to execute. At their request, the Court stayed this action pending that execution. However, on July 31, 2015, the parties informed the Court that they had been unable to perform the settlement's terms. The Court lifted the stay and ordered the parties to conduct the previously prescribed jurisdictional discovery. After the parties completed that process, EHR and Cooper filed renewed motions to dismiss on December 1, 2015.

Meanwhile, on October 27, 2015, EHR filed an action in Florida state court. In addition to Scardino, it sued Blue Tack Consulting, LLC, a company Scardino created after she left EHR, and Maribeth Fargnoli, a former EHR contractor who now works for Blue Tack. In the Florida case, EHR generally contends that Scardino was merely an independent contractor and that after it dismissed her, she and Fargnoli waged a campaign of unfair competition against it. EHR alleges that Scardino and Fargnoli, individually and through Blue Tack, have stolen and misappropriated EHR trade secrets and other intellectual property, defamed EHR to existing and potential clients, and tortiously interfered with an EHR contract. EHR also alleges that Scardino

stole a cell phone and a laptop from it and that, insofar as she might have an equity interest in EHR, she breached a fiduciary duty to it.  The case was removed to the United States District Court for the Northern District of Florida, Tallahassee Division, where it is designated as case No. 4:15-cv-00561-RH-CAS.

Scardino filed the instant motion on November 20, 2015.  The parties have since fully briefed the motion, and thus it is ripe for consideration.

## DISCUSSION

Scardino asks this Court to stay the Florida case, dismiss it, or transfer it to this District. She bases her request on the so-called "first-filed" principle, which provides that "when similar lawsuits are filed in multiple fora, 'the first suit should have priority absent the showing of [a] balance of convenience in favor of the second action.'"  *Harleysville Mut. Ins. Co. v. Hartford Cas. Ins. Co.*, No. 7:11-CV-187-FL, 2012 WL 1825331, at *4 (E.D.N.C. May 18, 2012) (quoting *Volvo Constr. Equip. N. Am. v. CLM Equip. Co.*, 386 F.3d 581, 594–95 (4th Cir. 2004)).  Courts give effect to that priority by staying the second case, dismissing it, or transferring it to the first case's forum.  *E.g.*, *Victaulic Co. v. E. Indus. Supplies, Inc.*, No. 6:13-cv-1939-JMC, 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) (citation omitted).  However, when administrative concerns, such as efficiency or convenience, will be better served by litigating the two cases in the second case's forum, the court may transfer the first case.  *See, e.g.*, *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, No. 02 C 3566, 2002 WL 31307426, at *2 (N.D. Ill. Oct. 11, 2002) (transferring first-filed case to forum of second-filed one due to transferee court's superior familiarity with issues).

Courts have divided the question of whether and how to apply this principle into two analytical steps.  First, courts consider "'whether the two competing actions are substantively the

3

same or sufficiently similar to come within the ambit'" of the principle.  *Victaulic Co.*, 2013 WL 6388761, at *3 (quoting *Harris v. McDonnell*, No. 5:13-cv-00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)).  Typically, three factors inform that consideration: "'(1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake.'"  *Id.* (quoting *Harris*, 2013 WL 5720355, at *3).  If the court finds the cases are sufficiently similar, it then decides which forum is better-suited to adjudicate the controversy. Courts often make that decision by looking to the same factors they use in a deciding whether to transfer a case under 28 U.S.C. § 1404(a):

> "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice."

*Id.* (quoting *Nexsen Pruet, LLC v. Westport Ins. Corp.*, No. 3:10-cv-895-JFA, 2010 WL 3169378, at *2 (D.S.C. Aug. 5, 2010)).

Scardino strenuously argues that the two cases are sufficiently similar to trigger the principle, and thus the Florida case must either be transferred here.  EHR and Cooper argue just as strenuously that the cases are not sufficiently similar and that all involved would be better served by this Court sending the South Carolina case to Florida under § 1404(a).  In other words, both sides assert that the two cases should be litigated in one forum at the same time but disagree on where that should happen.

The parties have thoughtfully framed their arguments to respond to the two steps and ten factors mentioned above.  Each side argues that most of the factors favor its position and that none favor the other side.  By organizing their briefs that way, the parties have pointed the Court to many useful facts.  However, the Court is reluctant to approach the question before it with a

4

similarly dogged focus on who can claim ownership of the most factors.  That approach lends itself to the mechanical rigidity of scorekeeping, which conflicts with the admonition that the first-filed doctrine is "'not to be mechanically applied.'"  *E.g.*, *Vitaulic*, 2013 WL 6388761, at *2 (quoting *Harris*, 2013 WL 5720355, at *3).

That the principle is not to be applied mechanically shows it is not a true rule; indeed, unlike a rule, application "is discretionary, not mandatory."  *Harris*, 2013 WL 5720355, at *3 (citing *US Airways, Inc. v. U.S. Airline Pilots Ass'n*, No. 3:11–CV–371–RJC–DCK, 2011 WL 3627698, at *1 (W.D.N.C. Aug. 17, 2011)); *see also CACI Int'l v. Pentagen Techs. Int'l.*, 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (per curiam) (stating this circuit "has no unyielding 'first-to-file' rule").  The principle is simply a judge-made tool to help courts carry out their duty of sound case administration.  *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (stating the principle "is to be applied with a view to the dictates of sound judicial administration."); *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2, 181 (4th Cir. 1974) (describing the principle as "a rule of sound judicial administration").  When competing actions are filed in different districts, that duty requires the court with the first case to decide how best to conserve court resources, minimize inconvenience, and guard against duplicative litigation and its potential to create inconsistent results.  *See E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 977 (3d Cir. 1988) (stating the principle's primary goals are "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments"), *aff'd*, 493 U.S. 182 (1990); *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (stating the polices underlying the principle are "the avoidance of duplicative litigation and the conservation of judicial resources"); *Candela Corp. v. Palomar Med. Techs., Inc.*, No. 9:06-CV-277, 2007 WL 738615, at *1 (E.D. Tex. 2007) (indicating that

"judicial and litigant economy, and the just and effective disposition of disputes" are paramount); *Walker Grp., Inc. v. First Layer Commc'ns, Inc.*, 333 F. Supp. 2d 456, 460 (M.D.N.C. 2004) (stating the court with the first-filed case is to decide what should be done with the second-filed case).

In some instances, giving the first case priority over the second will be the best solution. However, that may not always be true, and courts cannot ignore their obligation to fashion some other equitable solution that, in their reasoned discretion, they believe will better serve litigants, witnesses, and the court system. *See E.E.O.C.*, 850 F.2d at 977 (stating that the principle is grounded in equitable considerations and that a court's discretion in case administration requires it to act "'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result'" (quoting *Langnes v. Green*, 282 U.S. 531, 541 (1931))); *id.* ("[F]undamental fairness dictates the need for 'fashioning a flexible response to the issue of concurrent jurisdiction.'" (quoting *Church of Scientology v. United States Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979))); *Harris*, 2013 WL 5720355, at *3 (stating that applying the principle is "ultimately . . . an equitable, case-by-case, discretionary determination." (citation omitted)); *Samsung Elecs. Co.*, 386 F. Supp. 2d at 724 (stating courts commonly decline to give the first-filed case priority "'when justice or expediency so requires.'" (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993))). Although analyzing the facts through the lens of the ten factors may help courts fashion that case-specific solution, the factors—and the principle they expound—cannot be allowed to displace the larger question they are meant to help answer. In other words, a court asked to apply the first-filed principle should do so only after satisfying itself that doing so is the most just and convenient course of action available.

With that clarification in mind, the Court turns to the parties' arguments.

First, the parties dispute whether the Florida and South Carolina cases are sufficiently similar to warrant court action. As this Court has previously noted, the South Carolina case "appears to turn largely, if not entirely, on the nature of [Scardino]'s position with EHR and the legal relationship between [Scardino] and Cooper." (Order dated Oct. 20, 2014, ECF No. 16, at 1 n.1.) That cannot be said of the Florida case. EHR's allegations focus on events that transpired well after Scardino's relationship with EHR and Cooper disintegrated—namely, that Scardino started a competing company and then, with Fargnoli's help, converted EHR's physical and intellectual property, unfairly took business from EHR, and defamed EHR. To be sure, Scardino's legal relationship with Cooper and EHR is an issue that forms part of the factual basis for some of EHR's claims against Scardino. That relationship, then, is an important common thread in both cases. However, unlike the South Carolina case, many of the Florida case's key issues do not depend on what a judge or jury might say about that relationship.[1] Even by Scardino's count, the issues in the South Carolina case touch on no more than four of the ten substantive claims in the Florida case. In other words, although the issues in these cases overlap, the overlap is lopsided; the Florida case is far broader in scope than the South Carolina case. Thus, the two cases are not sufficiently similar to give the South Carolina case priority. *Cf. Red Bone Alley Foods, LLC v. Nat'l Food & Beverage, Inc.*, No. 4:13-cv-3590-PMD, 2014 WL 1093052, at *8 (D.S.C. Mar. 14, 2014) (finding two cases with some similar factual issues and claims were nonetheless not parallel lawsuits); *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 388 (D. Conn. 2008) (finding two related cases did not warrant first-filed analysis because one was "much broader" than the other).

---

1. For example, a determination that Scardino holds an ownership interest in EHR would not preclude liability for her alleged defamation of EHR or Cooper. Further, the Court fails to see how any of EHR and Cooper's three claims against Fargnoli would be affected by a decision on whether Scardino was an equity partner in EHR.

7

Scardino argues the differences in the cases are not so vast as to prevent a finding of substantial similarity. She bases that argument on *Seithel v. Feldman & Pinto, P.A.*, in which this Court applied the first-filed principle to two cases involving South Carolina attorney Lynn Seithel's association with a Pennsylvania law firm. No. 2:11-cv-1854-PMD, 2011 WL 3924179 (D.S.C. Sept. 7, 2011). In that case, the firm sued Seithel in Pennsylvania, alleging that she misused and converted firm property and that she misrepresented her professional skills, her business connections, and her ownership status in the firm. *See id.* at *4, 7. Seithel then filed her own suit here, alleging that the firm improperly failed to pay her and make her a partner and that, after the firm dismissed her, it published libelous statements impugning her professional and personal reputation. *Id.* at *3, 7. When the firm asked the Court to transfer Seithel's case to Pennsylvania, Seithel argued the two cases were not similar because her libel claim was unrelated to her employment and ownership status in the firm. This Court disagreed and found the two cases were substantially similar because "all of the claims" in them arose "out of Seithel's association with the firm and the fallout from the end of that relationship." *Id.* at *7.

Scardino contends that, as in *Seithel*, the claims in her two cases all relate to her relationship with EHR and the fallout from her termination. *Seithel*, however, is distinguishable. Here, as noted above, the Florida suit includes several claims that are unrelated to the dispute over whether Scardino was an employee or even a part owner of EHR or instead was merely an independent contractor. Comparing the defamation claims here and in *Seithel* illustrates the distinction. Seithel's libel claim did not differentiate the two cases because the allegedly defamatory statements in question accused Seithel of making misrepresentations and stealing the firm's property—precisely what the firm was alleging in its lawsuit. 2011 WL 3924179, at *7.

8

Thus, the two cases were intimately related because if the firm proved its fraud and conversion claims, it would thereby show that all of its allegedly defamatory statements about Seithel were true. *Id.* In contrast, EHR's defamation claims are not inextricably intertwined with Scardino's claims. EHR and Cooper allege that Scardino and Fargnoli disseminated misstatements about Scardino's authority in EHR, about other EHR consultants, and about EHR's competency to perform specific types of services. At best, a finding that Scardino was an equity partner might affect only the first of those allegations. The issues in the two cases here simply do not have the overwhelming interconnectedness seen in *Seithel*.

Nevertheless, the parties and issues in the Florida and South Carolina cases do overlap somewhat, and the interest in efficient uses of time, effort, and money counsels that the two cases should be litigated together in a single forum. *See Quantum Catalytics, LLC v. VantagePoint Venture Partners*, No. CIV A H-07-2619, 2008 WL 5272483, at *3 (S.D. Tex. Dec. 16, 2008) ("Pursuant to no logical analysis can it be said that utilizing the resources of two courts to resolve the same issues involving the same parties is efficient."). For several reasons, the Court finds that Florida is the more appropriate forum for that consolidated litigation.

First, as discussed above, the Florida case is the broader of the two. Rather than greatly expand the issues before this Court, the more prudent choice is for the larger case to absorb the smaller one. *Cf. CACI Int'l*, 70 F.3d 111, 1995 WL 679952, at *6 (finding district court did not err in hearing second-filed action because, among other things, it was broader than the first-filed action); *Roller Bearing Co. of Am.*, 570 F. Supp. 2d at 389 ("Judicial economy is best served by allowing the . . . much broader action to proceed here . . . so that all of the disputes between the parties can be resolved in a single proceeding.").

9

Second, the South Carolina case is, at its core, about Scardino's relationship to a northern Florida company. Although Scardino performed some of her work in South Carolina, ultimately she was working remotely for that northern Florida company. Meanwhile, the Florida case is about whether that northern Florida company was slandered and improperly deprived of property and business opportunities. Certainly, because Scardino lives and has worked here, South Carolina has a connection to these cases. However, the issues in both cases all lead back to Florida, making that state's connection to the cases much stronger than that of South Carolina. Thus, the cases constitute a local controversy in Florida that should be decided there. *See also Roller Bearing Co. of Am.*, 570 F. Supp. 2d at 388 (finding litigation more appropriate in forum that was closer to the facts' "center of gravity").

Third, and perhaps most importantly, most of the identified key witnesses in these cases live in Florida. Tom Johnson, Joe Harper, Claire Bradt, Felipe Cruz, and Chuck Cliburn live in Florida. Both sides have identified these five individuals as witnesses who will offer important testimony on specific issues in the two cases.[2] It appears to be more convenient and less costly for these witnesses—particularly the ones who either live or work in northern Florida—to appear for a trial in Tallahassee than one in Charleston. Moreover, if these witnesses prove unwilling to appear for a trial or a deposition, the Northern District of Florida could compel their attendance through subpoenas, but this Court could not. *See* Fed. R. Civ. P. 45(c)(1) (providing that non-

---

2.    Scardino argues that EHR and Cooper's position on witness convenience fails because they have not proven that these witnesses will testify on matters germane to every one of EHR's claims in the Florida case. Although it is true that EHR and Cooper have not tied these witnesses to all of EHR's claims, that is not fatal to their position. Scardino testified that Johnson, Harper, Bradt, and Cruz were involved in the development of an EHR software program called ReadyCert. Scardino asserts in the South Carolina case that she helped create and partly owns ReadyCert, and EHR asserts in the Florida case that Scardino plagiarized ReadyCert to create very similar software for Blue Tack. Thus, as Scardino admits, these four people "have relevant knowledge and will likely be witnesses in [her] case." (Pl.'s Reply Br., ECF No. 55, at 8.) As for Cliburn, Scardino's complaint mentions him by name and alleges that he witnessed a confrontation between Scardino and Cooper. Accordingly, Scardino herself has proven that these five Floridians can testify on matters central to the South Carolina case, which means they are likely to offer testimony relevant to some of the issues in the Florida case. No further evidence from EHR or Cooper is needed. *Cf. Red Bone Alley Foods*, 2014 WL 1093052, at *10 (finding party seeking transfer of case to Texas failed to identify any Texans who would be named as witnesses or to describe any of their anticipated testimony).

10

party witnesses can be commanded to appear only within 100 miles of where they reside, are employed, or regularly transact business in person); *Roller Bearing Co. of Am.*, 570 F. Supp. 2d at 389 (stating a court's inability to compel witness attendance "weighs in favor of transfer to a forum where a large number of non-party witnesses reside" (citation omitted)).

In contrast, the only confirmed South Carolina witness for either of the two cases is Scardino. Litigating in Florida will likely be less convenient for her than South Carolina, but as a litigant, her convenience cannot outweigh the need to ease the burdens on non-party witnesses. *See Samsung Elecs. Co.*, 386 F. Supp. 2d at 718 (stating that, in considering whether to transfer a case, the court should give the convenience of non-party witness more weight than it gives to parties' convenience).

Scardino asserts she "may" call employees of Blue Cross Blue Shield of South Carolina to testify about a 2012 project that EHR performed here. (Pl.'s Reply Br., ECF No. 55, at 8.) In addition to being speculative, her assertion is insufficient because she has not named any specific individuals or confirmed that any of her potential witnesses actually live in South Carolina. *Cf. Red Bone Alley Foods*, 2014 WL 1093052, at *10 (finding party seeking transfer of case to Texas failed to identify any Texans who would be named as witnesses or to describe any of their anticipated testimony). Given that Scardino is referring to events that occurred four years ago, it is entirely plausible that the persons Scardino may want to testify now live out of state. This Court will not sacrifice the convenience of five confirmed Florida witnesses to accommodate an unknown quantity of people who may or may not be called and who may or may not live here.

Additionally, Scardino notes that Fargnoli lives in Massachusetts and that some potential witnesses may be located in California, Georgia, New York, Texas, Tennessee, and Canada. Even ignoring Scardino's speculation about the location of those unnamed potential witnesses,

11

the fact that they may be scattered across the continent does not affect this Court's analysis. Neither side has argued—much less shown—that South Carolina or Florida would be more convenient for any of these individuals. Thus, as far as the Court can tell, travelling to Florida or South Carolina would be equally burdensome for Fargnoli and the potential other witnesses.

Finally, in EHR and Cooper's renewed personal-jurisdiction challenges, the parties dispute whether Scardino moved to South Carolina in August 2013 or November 2013. Scardino asserts that if EHR and Cooper continue to dispute that fact, she will call several South Carolinians to verify when she moved here. However, even if, as Scardino insists, she would truly need to call "a number of witnesses" to prove when she moved here, (Pl.'s Reply Br., ECF No. 55, at 8), that issue is of marginal importance and therefore cannot justify litigating both cases here simply to accommodate those witnesses. *See Samsung Elecs. Co.*, 386 F. Supp. 2d at 718 (indicating the issue of witness convenience turns substantially on the materiality of the witness's testimony).

The issue of witness convenience is "not merely a battle of numbers favoring the party that can provide the longest list of witnesses it plans to call," *Samsung Elecs. Co.*, 386 F. Supp. 2d at 718–19 (citation and quotation marks omitted), and the Court is not swayed merely by Florida having more confirmed witnesses than South Carolina. Rather, the record here reflects that the convenience and control of important witnesses tilt heavily toward Florida. Although Scardino's burden of litigating in Florida is relevant, the benefits for the courts and known witnesses outweigh it. As this Court wrote in a slightly different context, "travelling to a different state several times is a minimal burden that is unavoidable and one of the parties must shoulder that burden." *Seithel*, 2011 WL 3924179, at *6.

Scardino argues this Court must defer to her choice of forum. A plaintiff's forum choice often has great weight in the analysis of whether an individual case should be transferred under § 1404(a). *See, e.g.*, *Red Bone Alley Foods*, 2014 WL 1093052, at *9. However, where, as here, related suits are pending in different venues, deference to the plaintiff's choice of forum "loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010). Thus, Scardino's decision to file suit here has no weight in the Court's analysis.

Finally, the Court recognizes that the South Carolina case is far older than the Florida case, which would suggest that this Court is familiar with the issues and thus is the better forum. After all, "[j]udicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case," *Samsung Elecs. Co.*, 386 F. Supp. 2d at 722, and generally, federal district courts are quite familiar with cases that have been pending for nearly two years. However, that correlation between duration and familiarity is not present here. Other than the venue question that this Order addresses, the only significant issue the parties have brought before the Court is whether it has jurisdiction over EHR and Cooper. The Court has not addressed that threshold question except to say that it lacked sufficient information to make a decision and to order the parties to gather additional evidence. Wisely, the parties refrained from jurisdictional discovery while they attempted to resolve the case. Once that settlement failed, however, the parties then had to conduct discovery that the Court had ordered nearly a year earlier. Briefing on the jurisdictional issue ended just weeks ago. With no other meaningful events in the case, it is still essentially where it stood when EHR and Cooper filed their removal notice in July 2014. The Court's investment of resources has been minimal, and its limited knowledge of the issues is not superior

13

to that of the Florida district court. Under these unusual circumstances, the South Carolina case's age has no significance in this Court's venue analysis.

In sum, whether one frames the issue as an application of the first-filed principle or as a § 1404(a) transfer, EHR and Cooper have established that, as a matter of sound judicial administration, the two cases should be litigated in Florida. *See Red Bone Alley Foods*, 2014 WL 1093052, at *9 (stating the party seeking transfer under § 1404(a) "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice" (citation and quotation marks omitted)); *Nexsen Pruet, LLC*, 2010 WL 3169378, at *2 (stating the party seeking transfer of first-filed action must demonstrate that such a transfer is warranted). Accordingly, the Court will transfer the case to the Northern District of Florida.[3]

## CONCLUSION

Therefore, for the foregoing reasons, it is **ORDERED** that Plaintiff's motion to stay, transfer, or dismiss the Florida action is **DENIED**. It is further **ORDERED** that this case is transferred to the United States District Court for the Northern District of Florida, Tallahassee Division.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**April 5, 2016**
**Charleston, South Carolina**

---

3. In deference to the transferee court, and to avoid potentially rendering advisory opinions, this Court declines to rule on EHR's and Cooper's renewed motions to dismiss on Scardino's pending motion for protective order.